UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ABRAITIS,

     Petitioner,

v.

CONNIE HORTON,

     Respondent.

Case No. 14-14434
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS [12], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

---

Following a jury trial in Saginaw County Circuit Court, Mark Abraitis was convicted of
first-degree premeditated murder and a number of firearms-related crimes for the killing of his
girlfriend. Abraitis filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging his convictions on six separate grounds. For the reasons that follow, the petition is
DENIED.

**I.**

This Court recites the relevant facts relied upon by the Michigan Court of Appeals, which
are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), *see Wagner v. Smith,*
581 F.3d 410, 413 (6th Cir. 2009):

> This case involves the April 24, 2011 shooting death of [Abraitis'] girlfriend. On
> the night of the incident, [Abraitis] and his girlfriend had an argument through text
> messages while the victim was at a bar with coworkers. [Abraitis'] coworkers saw
> him in an agitated state, with two guns in his car, claiming that he needed to shoot
> his guns to blow off steam. The victim's friends last saw her at the bar that night.
>
> The next day, the victim's normally immaculate apartment was found in disarray.
> Police officers found [Abraitis] in his home with a note admitting that he had shot
> his girlfriend. The victim's body was found in a rural ditch, covered by cardboard.

She had a gunshot wound to the head. Police recovered the murder weapon and another handgun, which were eventually determined to be stolen.

*People v. Abraitis*, No. 309955, 2013 WL 951134, at *1 (Mich. Ct. App. Feb. 21, 2013).

The Michigan Court of Appeals affirmed Abraitis' conviction, *id.*, and the Michigan Supreme Court denied his application for leave to appeal, *People v. Abraitis*, 836 N.W.2d 170 (Mich. 2013) (mem.).

Abraitis filed a habeas petition with this Court, which was held in abeyance to permit him to return to the state courts to exhaust additional claims. *Abraitis v. Woods*, No. 14-CV-14434, 2015 WL 1541871 (E.D. Mich. Apr. 7, 2015). This included a post-conviction motion for relief from judgment in the Michigan state trial court, which was denied. *People v Abraitis*, No. 11-036618-FC (Saginaw Cty. Cir. Ct., Feb. 8, 2016). The Michigan appellate courts denied Abraitis leave to appeal. *People v. Abraitis,* No. 332108 (Mich. Ct. App. Jul 25, 2016); *People v. Abraitis*, 888 N.W.2d 102 (Mich. 2017) (mem.).

Abraitis now seeks habeas relief on six grounds: (1) there was insufficient evidence to prove beyond a reasonable doubt that Abraitis was guilty of first-degree premeditated murder, (2) it was an abuse of discretion for the trial judge to admit gruesome autopsy photographs, (3) Abraitis was denied effective assistance of counsel, (4) his state and federal constitutional rights were violated when the trial court denied two motions, (5) his state and federal constitutional rights were violated when the trial court denied him an independent psychological evaluation and expert, and (6) juror misconduct resulted in a structural error. (ECF No. 12, PageID.165).[1]

---

[1] Due to the brevity of the petition for writ of habeas corpus and the overlap of issues, this Court will incorporate the arguments raised in Abraitis's state appellate court and post-conviction briefs which he attached to his original and amended petitions as being part of Abraitis's application for writ of habeas corpus. *See, e.g.*, *Burns v. Lafler,* 328 F. Supp. 2d 711, 717 n.2. (E.D. Mich. 2004). Abraitis's supplemental brief on appeal that he attached to his petition was not

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this case, "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). The Supreme Court has emphasized that "'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's

---

legible, however, so the Court reviewed a legible copy of the supplemental brief on appeal that was provided by respondent as part of the Rule 5 materials. (*See* ECF No. 16-16.)

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.

## A.

Abraitis first argues that there was insufficient evidence of premeditation or deliberation to support his conviction for first-degree murder.

The Michigan Court of Appeals decided this issue on direct appeal, finding "[a] review of the entire record reveals that there was sufficient evidence for a jury to find premeditation." *People v. Abraitis*, 2013 WL 951134, at *2. The Court of Appeals detailed the evidence of guilt:

> The prosecution presented evidence that defendant had acquired stolen guns the day prior to the incident. On the night of the incident, he expressed that he was so angry that he needed to fire his weapons. The same night, the victim received numerous nasty and belligerent texts from defendant. The day after the incident, the victim's normally immaculate bedroom was found in disarray. Police found the victim in pajama-type clothing without shoes, a jacket, or her cellphone. A rational jury could determine that defendant forced the victim from the apartment or that she was forced to leave in a hurry. Furthermore, defendant took the victim to a very rural setting. Also, the victim had two contusions on her upper chest from which the jury could infer that defendant held her down by pressing his knees into her chest. The evidence indicated that the gun was loosely touching the victim's face when fired, creating a contact wound, and that defendant shot straight down through the victim's face and into the ground. Defendant then moved her body 100 feet into a ditch filled with water and covered her with cardboard. This was sufficient evidence for a rational jury to infer that defendant planned the crime. Therefore, there was sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant's killing of the victim was premeditated.

*Id.* (internal citation omitted).

Because the Michigan Court of Appeals adjudicated the sufficiency-of-the-evidence claim on the merits, § 2254(d) applies. A federal habeas court may not overturn a state-court decision that rejects a sufficiency-of-the-evidence claim simply because the federal court disagrees with the

state court's adjudication of that claim. Instead, a federal court may grant habeas relief only if the state-court decision was an objectively unreasonable application of the *Jackson v. Virginia* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted). Thus, for a federal habeas court reviewing a state-court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberate and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995)). Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide. *Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 531 N.W.2d at 786.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *Williams*

*v. Jones,* 231 F. Supp. 2d 586, 594–95 (E.D. Mich. 2002) (quoting *People v. Vail*, 227 N.W. 2d 535, 538 (Mich. 1975)). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 229 N.W.2d 497, 500 (1975)). Premeditation and deliberation may be inferred from the type of weapon used, the location of the wounds inflicted, and circumstantial evidence. *See People v. Berry*, 497 N.W.2d 202, 204 (Mich. Ct. App. 1993); *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 233 N.W. 2d 617, 619 (Mich. Ct. App. 1975)); *DeLisle v. Rivers*, 161 F. 3d 370, 389 (6th Cir. 1998).

Here, it was reasonable for the Michigan Court of Appeals to conclude that there was sufficient evidence for a rational trier of fact to find that Abraitis acted with premeditation and deliberation when he shot the victim. The evidence established that Abraitis had been engaged in an argument with the victim on the evening of the shooting. Evidence that Abraitis had a prior dispute with the victim supports a reasonable inference that the subsequent shooting was premeditated. *See Scott*, 302 F.3d at 603. The evidence also showed that Abraitis shot the victim in the head at close range. Under Michigan law, premeditation may be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe*, 338 F. 2d 62, 69 (6th Cir. 1964). Evidence that the victim was shot in the head at close range supports a finding of premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x 403, 407 (6th Cir. 2014); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 833 (E.D. Mich. 2003). Evidence that Abraitis moved the victim's body to a more secluded area following the shooting in an attempt to hide it also supports an inference of premeditation and deliberation. *See People v. Johnson*, 597 N.W. 2d 73, 79 (Mich. 1999). Abraitis fled the scene afterwards, which also supports a finding of premeditation. *See, e.g.*, *Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004). The fact

that Abraitis did not attempt to seek medical help for the victim after the shooting could also lead a rational trier of fact to conclude that Abraitis acted with premeditation and deliberation when he killed the victim. *See Delisle*, 161 F.3d at 389 (finding that circumstantial evidence of premeditation was established by petitioner's failure to help victims after car was driven into lake).

This Court cannot say that the Michigan Court of Appeals' rejection of Abraitis' insufficiency of evidence claim resulted in a decision that was contrary to, or involved an unreasonable application of, *Jackson*. *See Durr v. Mitchell,* 487 F. 3d 423, 448 (6th Cir. 2007); *Titus v. Jackson*, 452 F. App'x 647, 650 (6th Cir. 2011). So Abraitis is not entitled to relief on his first claim.

## B.

Abraitis next contends that his right to a fair trial was violated by the admission of two autopsy photographs, which he claims were "gruesome" and unduly prejudicial. This claim was considered and rejected by the Michigan Court of Appeals. *See Abraitis*, 2013 WL 951134, at *2.

A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000) ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996))).

The Michigan Court of Appeals reviewed the trial court's decision to admit the photographs for a clear abuse of discretion. *Abraitis*, 2013 WL 951134, at *2. The Court of Appeals found, "Despite any gruesomeness, the photographs were admitted for a proper purpose." *Id.* (citing *People v. Unger*, 749 N.W.2d 272, 303 (Mich. Ct. App. 2008)). The photographs were used to "establish that defendant was on top of the plaintiff, holding her down with his knees, when he held the gun to her face and shot straight through her head." *Id.*

Abraitis' claim that the trial court erred in admitting photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See, e.g.*, *Franklin v. Bradshaw,* 695 F.3d 439, 456–57 (6th Cir. 2012) (holding that state court's determination that petitioner's right to fair trial was not denied by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on large projector screen during trial was not contrary to clearly established federal law). In particular, the introduction of graphic or gruesome photographs of a murder victim does not entitle Abraitis to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See, e.g.*, *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso because the photos were highly probative of the prosecutor's claim that the petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative").

The trial court's decision to admit the autopsy photographs cannot be said to "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked

as fundamental." *Egelhoff*, 518 U.S. at 43. As the Michigan Court of Appeals held, the autopsy photographs were highly probative in determining Abraitis' intent and showing that Abraitis acted with premeditation. Because the photographs served a proper evidentiary purpose, the trial court's decision to admit them did not render Abraitis' trial fundamentally unfair or entitle him to habeas relief.

## C.

Abraitis' third habeas claim is that he was denied the effective assistance of trial counsel. On direct appeal, Abraitis argued that his trial counsel made four separate errors which individually and cumulatively denied Abraitis effective assistance of counsel.[2] (ECF No. 16-16, PageID.662.) These claims were adjudicated on the merits by the Michigan Court of Appeals and rejected. *Abraitis*, 2013 WL 951134, at *3.

To show that he was denied the effective assistance of counsel under federal constitutional standards, Abraitis must satisfy the *Strickland* two-prong test. First, Abraitis must demonstrate that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, Abraitis must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Second, Abraitis must show that such deficient performance prejudiced his defense. *Id*. at 689. To demonstrate prejudice, Abraitis must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

---

[2] These four separate errors were not detailed in Abraitis's habeas application, but as noted above, the Court will still address each argument as raised on direct appeal.

**1.**

Abraitis first argued that his trial counsel was ineffective for failing to investigate or present an insanity defense.

The Michigan Court of Appeals rejected this claim. *Abraitis*, 2013 WL 951134, at *3. First, the Court of Appeals stated, "At trial, defense counsel indicated that he determined such a defense would not be viable." *Id.* Second, "Defendant has provided no evidence that he suffers from mental illness or mental retardation, let alone that one of these disorders affected his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." *Id.* The Court of Appeals thus concluded that there was no basis for finding that an insanity defense was viable and the "decision not to seek an insanity defense was one of trial strategy with which we decline to interfere." *Id.* (citing *People v. Ericksen,* 793 N.W.2d 120, 122 (Mich. Ct. App. 2010); *People v. Unger,* 749 N.W.2d 272, 296 (Mich Ct. App. 2008)).

Evaluating this under § 2254(d), this Court finds that the state court's decision was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. As the Court of Appeals noted, Abraitis failed to present any evidence that he was legally insane at the time of the crime. There is also clear evidence in the record that trial counsel made a strategic choice not to pursue an insanity defense. *See Strickland*, 466 U.S. at 689 ("a court must indulge a strong presumption that counsel's conduct…might be considered sound trial strategy.") (internal citations omitted).

**2.**

Second, Abraitis contends that trial counsel was ineffective because he failed to timely file a motion for an independent psychological evaluation after the examination conducted by the

prosecution found Abraitis competent to stand trial and that he was not insane at the time of the offense. (ECF No. 16-16, PageID.682.)

The Michigan Court of Appeals considered and rejected this argument, finding that "counsel investigated defendant's request for such an examination and found no basis for the request. Defendant does not identify any facts or circumstances that would call into question the results of the competency evaluation that was performed and does not explain why an independent psychological evaluation would have been warranted." *People v. Abraitis*, 2013 WL 951134, at *3.

The findings of the Court of Appeals are reasonable under federal law. Abraitis cannot overcome the presumption that trial counsel made a sound strategic decision not to seek a second psychological evaluation. *See Strickland*, 466 U.S. at 689. Abraitis also cannot establish prejudice because he has not shown that there is a reasonable probability that a second evaluation would have determined that he was legally insane at the time of the crime or mentally incompetent at the time of trial. *See Powell v. Collins*, 332 F.3d 376, 393 (6th Cir. 2003). Thus, Abraitis cannot establish a claim for relief on this ground.

### 3.

Abraitis next claims that trial counsel was ineffective for failing to move for a change of venue based on prejudicial pretrial publicity.

The Michigan Court of Appeals rejected Abraitis' claim as follows:

Defense counsel indicated that he researched the issue and concluded that there was no basis to move for a change of venue because pretrial publicity alone was not sufficient to warrant a change. This reasoning is supported by *People v. Jendrzejewski*, 455 Mich. 495, 502–503, 566 N.W.2d 530 (1997). Defendant offers no evidence to support his assertion that a change of venue was warranted. He only asserts that the crime occurred in 2011 and that the trial did not occur until 2012, such that potential jurors could have opinions on the matter. "The burden rests on the defendant to demonstrate the existence of actual prejudice or the presence of

strong community feeling or a pattern of deep and bitter prejudice so as to render it probable that jurors could not set aside their preconceived notions of guilt, notwithstanding their statements to the contrary." *People v. Harvey*, 167 Mich.App. 734, 741–742, 423 N.W.2d 335 (1988). Defense counsel investigated and determined that defendant could not meet his burden; there has been no showing that defense counsel erred.

*Abraitis*, 2013 WL 951134, at *4.

Once again, the Court of Appeals was reasonable in finding that defense counsel's informed strategic decision not to pursue a change of venue was not ineffective performance.

The judge and defense counsel brought up the issue of pre-trial publicity during *voir dire.* One potential juror indicated that he had heard about the case in the news. (ECF No. 16-8, PageID.412, 417.) The man indicated that his memory of the details of the case was "fuzzy" but admitted that his knowledge of the case might lead him to pre-judge the case. (*Id.*) The man was excused from the jury. (*Id.* at PageID.418.) A second potential juror indicated to the judge that his wife frequented the restaurant where the victim had worked and had discussed the case with people who worked there, but he did not believe this would affect his judgment, although he subsequently indicated that he was unsure whether or not it would. (*Id.* at PageID.412.) The second man later indicated during questioning from defense counsel that he had heard about the case on television but did not elaborate on the extent of the information. (*Id.* at PageID.417.) This juror also was excused by the court. (*Id.* at PageID.418). None of the other potential jurors indicated that they had been exposed to pre-trial publicity of the case. (*Id*. at PageID.412.)

"It is well established that if prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the court should grant the defendant a change in venue." *Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012) (citing *Irvin v. Dowd*, 366 U.S. 717, 722–24 (1961); *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007)). "Prejudice can be presumptive or actual." *Id.* (citing *Foley*, 488 F.3d at 387). "'Presumptive prejudice from pretrial publicity occurs

where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community" and "is rarely presumed.'" *Id.* (quoting *Foley,* 488 F.3d at 387). Absent presumed prejudice, "the trial court has a responsibility to confront the fact of the publicity and determine if the publicity rises to the level of 'actual prejudice.'" *Id.* (quoting *Ritchie v. Rogers*, 313 F.3d 948, 962 (6th Cir. 2002)).

In the present case, Abraitis was not prejudiced by counsel's failure to move for a change of venue because he failed to identify any "inflammatory, circus-like atmosphere" that would support a finding of prejudice, nor did he identify any juror who was seated who was unable to set aside his or her knowledge of the case based on pre-trial publicity. Because Abraitis did not demonstrate any presumptive or actual prejudice based on pre-trial publicity, the Court of Appeals' finding that counsel was not ineffective for failing to move for a change in venue was reasonable. *See Campbell*, 674 F. 3d at 594.

**4.**

Abraitis next claims that trial counsel was ineffective for failing to timely notify the trial judge about a breakdown in the attorney-client relationship. The Michigan Court of Appeals determined that this claim lacked merit because

> the record indicates that defense counsel immediately told the court after defendant claimed a breakdown in the attorney/client relationship, which came immediately after the trial court denied defendant's motion for substitute counsel. Defendant has not pointed to any facts to indicate that defense counsel delayed in notifying the trial court of defendant's claim.

*Abraitis*, 2013 WL 951134, at *4. Abraitis has alleged no facts that support his contention that his counsel delayed or failed to notify the court about a breakdown in the attorney-client relationship. Thus, the Court of Appeals was reasonable in its determination of the facts and application of federal law and properly rejected this claim.

**5.**

Abraitis lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel. The Michigan Courts of Appeals held, "Because there were no individual instances of ineffective assistance of counsel, there was no cumulative effect." *Abraitis*, 2013 WL 951134, at *4. This finding is consistent with Sixth Circuit interpretation of Supreme Court precedent, and thus a reasonable application of federal law. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (finding there is no Supreme Court precedent obligating the state court to consider alleged trial errors cumulatively); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (holding that a claim of cumulative error is not cognizable post-AEDPA).

Because the Michigan Court of Appeals' analysis and rejection of Abraitis' ineffective-assistance-of-counsel claims is reasonable under § 2254(d), he is not entitled to relief on those claims.

**D.**

Abraitis' fourth habeas claims asserts that his constitutional rights were violated when the trial court denied two motions. Although the habeas petition does not detail which two motions, Abraitis' supplemental appeal brief indicates that he is challenging the trial judge's denial of his motion for substitution of counsel and his motion for an independent psychological evaluation. (ECF No. 16-16, PageID.691.) The Court will address each in turn.

**1.**

Abraitis moved for substitute counsel on the first day of trial. (ECF No. 16-7, PageID.374.) Abraitis alleged that he and his attorney had a breakdown in communication. Abraitis accused his attorney of failing to visit him or discuss trial tactics with him. Abraitis alleged that counsel had

met with him only one time. (*Id.*). Counsel stated that he met with Abraitis several times. (*Id.*) The court denied Abraitis' request for new counsel. (*Id.*)

After a brief recess, the issue was taken up again. The judge noted that Abraitis' first counsel was allowed to withdraw after Abraitis requested a new attorney, which led to the appointment of his current counsel. (ECF No. 16-7, PageID.375.) Counsel indicated that after checking his records, he was able to ascertain that he visited Abraitis four times in jail. (*Id.*) Counsel also detailed efforts he had taken in response to Abraitis' requests for him to file a number of motions. (*Id.*) The judge rejected Abraitis' motion for substitution of counsel because Abraitis did not "articulate[ ] legitimate reasons for having another attorney," his request was untimely coming on the day of trial, and this was already Abraitis' second attorney. (*Id.* at PageID.376.) The judge concluded that allowing substitution of counsel "would unreasonably disrupt the judicial process." (*Id.*)

> The Michigan Court of Appeals rejected Abraitis' claim for the following reasons:
>
> Here, defendant expressed ambiguous unhappiness with defense counsel's work and claimed that he did not believe that the attorney was doing enough work for him. This was insufficient to show good cause for substitute counsel. Defendant also claimed that defense counsel failed to visit him in jail. However, defense counsel refuted this claim by listing the specific times and duration of their visits. Furthermore, defendant's request came on the day of trial, and a substitution would have unreasonably delayed the trial. Therefore, the trial court did not abuse its discretion when it denied defendant's untimely request for substitute counsel.

*Abraitis*, 2013 WL 951134, at *4.

A criminal defendant has a Sixth Amendment right to select the counsel of his choice. But the right to counsel of one's own choice is not absolute. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). "The essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. U.S.*, 486 U.S. 153, 159 (1988). The

Supreme Court explicitly rejected "the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

When a criminal defendant makes a good-faith and timely motion for substitution of counsel, the trial court has a responsibility to consider that request. *See Martel v. Clair*, 565 U.S. 648, 664 (2012). But the Supreme Court recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (internal citations omitted). "Because a trial court's decision on substitution is so fact-specific, it deserves deference." *Martel*, 565 U.S. at 663–64. Particularly when a request for substitution of counsel is untimely, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

The Michigan Court of Appeals' decision to deny Abraitis' claim is a reasonable application of Supreme Court law for several reasons.

In its analysis, the Court of Appeals noted that the trial court judge properly considered Abraitis' request for substitution of counsel and determined he failed to show good cause. The trial court found that Abraitis did not establish that the conflict with his attorney was so great that it resulted in a total lack of communication which prevented an adequate defense. Also, as the Court of Appeals pointed out, Abraitis' request for a continuance to obtain new counsel was untimely because it was made on the first day of trial and would have further delayed the trial. Abraitis has never explained why he did not raise his dissatisfaction with his counsel to the trial court earlier. The Court of Appeals' properly deferred to the trial court's decision to deny substitution of counsel

in accordance with Supreme Court precedent. Abraitis is not entitled to federal habeas relief on this claim.

## 2.

The other portion of Abraitis' fourth habeas claim argues that he is entitled to habeas relief because the trial judge denied his motion for an independent psychological evaluation. Abraitis had already been evaluated by a psychiatrist or psychologist at the Forensic Center for Psychiatry, who found that Abraitis was competent to stand trial and that he was not insane at the time of the murder. The Michigan Court of Appeals rejected Abraitis' claim as follows:

> Defendant does not suggest that he was planning to have an evaluation at his own expense. He offered no evidence for the trial judge to find cause for an independent examination. A competency exam had already been performed in the matter, which concluded that defendant was competent to stand trial. The competency examination did not find that defendant was legally insane at the time the crime was committed. Furthermore, the request came on the day of the trial, which the trial judge reasonably concluded was a dilatory tactic, not good cause. Regardless, MCL 768.20a(1) requires a notice of intent to assert an insanity defense at least 30 days before trial. If the notice is not properly filed and served, the court must exclude evidence offered to establish insanity. MCL 768.21(1). Given that no notice was filed in this case and the evidence would therefore have been precluded, an abuse of discretion did not occur by denying defendant the opportunity to secure such evidence. Accordingly, the trial court did not abuse its discretion in denying defendant's request for an adjournment for an independent examination.

*Abraitis*, 2013 WL 951134, at *5.

In *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), the Supreme Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense will be a significant factor at trial, the state must afford a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense. "By its own terms, *Ake* 'limit[ed] the right [it] recognize[d]' to 'provision of *one* competent psychiatrist.'" *Leavitt v. Arave,* 646 F.3d 605, 610 (9th Cir. 2011) (emphasis added) (quoting *Ake*, 470 U.S. at 79). No circuit court has found that

*Ake* requires appointment of more than one mental health expert. *See, e.g.*, *Allen v. Mullin*, 368 F.3d 1220, 1236–37 (10th Cir. 2004) (holding that a state trial court's refusal to appoint a neuropsychologist to assist petitioner charged with murder during competency trial did not violate due process where court did appoint an expert and every witness who testified at competency trial opined that petitioner was competent); *Granviel v. Lynaugh*, 881 F.2d 185, 191 (5th Cir. 1989) (holding *Ake* did not require appointment of an additional psychiatrist); *Martin v. Wainwright*, 770 F.2d 918, 934 (11th Cir. 1985) (holding *Ake* did not require appointment of a second neurologist).

It cannot be said that the Michigan Court of Appeals' rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law at the time since *Ake* does not require the appointment of more than one expert to evaluate a defendant's mental state.

## E.

Abraitis next claims he was denied the right to present an insanity defense when the judge refused to grant him a continuance to be evaluated by a second psychiatrist or mental health expert. Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because defense counsel failed to object and the Michigan Court of Appeals relied on this failure to object in reviewing the claim for plain error only.

Procedural default is not a jurisdictional bar to review a habeas claim on the merits. Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Assuming without deciding that the claim is not procedurally defaulted, it fails on the merits. The Court notes that the Michigan Court of Appeals reviewed and rejected Abraitis' fifth claim under a plain-error standard because Abraitis failed to preserve the issue at the trial court level. *Abraitis*, 2013 WL 951134, at *5. Deference under § 2254(d) applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Although a criminal defendant has a right to present his own witnesses to establish a defense, that right is not without limits. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). Additionally, the defendant must comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). The Supreme Court has also emphasized its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

As the Michigan Court of Appeals explained, Abraitis did not file a notice of intent to raise an insanity defense in advance of trial and provided no excuse for why he did not seek an independent examination in the five months between the original competency determination and his trial date. Thus, the Court of Appeals weighed Abraitis' right to present a defense against his failure to comply with procedure and found the trial judge's decision to deny Abraitis' request was not plain error. Because there is no support for his claim that his right to present a defense was unconstitutionally limited, the decision of the Court of Appeals is reasonable and Abraitis is not entitled to relief on his claim.

**F.**

Abraitis' final claim is that he is entitled to habeas relief because of juror bias. He alleges that he discovered evidence that two of the jurors in his case were biased against him and had already predetermined his guilt, thus not truthfully answering *voir dire* questions. Abraitis raised this claim in a motion for relief from judgment filed with the state trial court. (ECF No. 16-13.)

The Warden contends that this claim is barred by the one-year statute of limitations because Abraitis filed his amended habeas petition containing this claim only after the one-year-limitations period expired.

AEDPA imposes a one-year limitations period for habeas petitions. 28 U.S.C. § 2244(d)(1); *see Lindh v. Murphy*, 521 U.S. 320, 337 (1997). When a habeas petitioner files an original petition within the one-year deadline and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Abraitis appears to argue that he only discovered the factual predicate for his juror-bias claim long after his trial. Pursuant to 28 U.S.C. § 2244(d)(1)(D), AEDPA's one-year limitations period begins to run from the date upon which the factual predicate for a claim could have been discovered through due diligence by the habeas petitioner. *See Ali v. Tenn. Bd. of Pardon & Paroles,* 431 F.3d 896, 898 (6th Cir. 2005).

Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F.3d 426, 429 n.2 (6th Cir. 2006) (quoting *Trussell v. Bowersox,* 447 F.3d 588, 590 (8th Cir. 2006)). The Court assumes without deciding

that the amended petition was timely. *See Ahart v. Bradshaw,* 122 F. App'x 188, 192 (6th Cir. 2005).

When reviewing claims raised in post-conviction proceedings, the Court must also consider whether the claims were adjudicated on the merits and thus are entitled to AEDPA deference and/or whether a procedural bar applies. A procedural bar applies when: "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). To answer this question, the Court must "look to the last reasoned state court opinion." *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). Here, that comes from the state trial court. Unfortunately, the opinion of the state trial court does not make it clear whether the decision rests on application of a procedural bar or is an adjudication on the merits. (ECF No. 16-15.)

The opinion first lays out the standard of review under MCR 6.508(D) and outlines the procedural bars under both (D)(2) and (D)(3) of that section, noting that actual prejudice must be shown to satisfy MCR 6.508(D)(3). (ECF No. 16-15, PageID.602.) The opinion then addresses the merits of Abraitis' claims of juror bias and finds, "No actual prejudice warranting a new trial has been shown." (*Id.* at PageID.605.) This emphasis on "actual prejudice" seems to suggest that the trial court is applying the procedural bar under 6.508(D)(3). But in an analogous case, the Sixth Circuit found that that "although the state court rejected the *Strickland* claim through a procedural-default ruling, the court addressed the alleged deficiency on the merits as part of its ruling, meaning AEDPA deference applies to the *Strickland* claim." *Perreault v. Smith*, 874 F.3d 516, 522 (6th Cir.

2017). Thus, it seems that the trial court's opinion should be treated as both a procedural-default ruling and an adjudication on the merits in the alternative. *See Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (applying AEDPA deference when the state court addresses the merits of the claims as an alternative to application of the procedural bar).

Abraitis' claim fails under either approach.

Abraitis alleges that juror Odulia Jambor failed to honestly answer his attorney's questions during *voir dire*. (ECF No. 16-7, PageID.387.) The attorney had asked the jurors whether they would be comfortable determining whether Abraitis was guilty of first-degree murder or the lesser offenses of second-degree murder and voluntary manslaughter. (*Id.*) In response to this question, none of the jurors indicated they would have a problem considering these different offenses. Abraitis claims that Jambor did not answer this question honestly and further was pre-disposed to find Abraitis guilty of first-degree murder based on a statement that she purportedly made in a post-verdict comment on Facebook: "God had this and we all did to all 14 jurors from the beginning and that I was gonna make sure he never got 2nd degree [murder]." (ECF No. 16-13, PageID.593.) Abraitis also claims that Jambor improperly thanked another juror, Karen Atwell Rice, for supporting her during the deliberations. Abraitis further alleges that Jambor and Rice were obviously biased against him because they both expressed their condolences to the victim's family in their respective post-verdict Facebook posts.

As discussed above, Abraitis failed to comply with the state rule that these types of claims must be raised on direct appeal and the state court applied the procedural bar. And enforcement of Michigan Court Rule 6.508(D)(3) constitutes "an independent and adequate state ground sufficient for procedural default." *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012). Review of Abraitis' defaulted claim is barred unless he demonstrates cause and actual prejudice or that failure to

consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Abraitis has not made either of these arguments. The Warden argued procedural default in his response to Abraitis' petition for a writ of habeas corpus. Abraitis did not file a reply or preemptively address the issue of procedural default in his petition. Thus, Abraitis' claim is procedurally defaulted.

But even if the state court decided the claim on the merits, Abraitis is not entitled to relief because the rejection of his claim of juror bias was reasonable under § 2254(d).

The Michigan trial court found that the comments failed "to demonstrate that Jambor did not honestly respond to the questions posed by Defendant's attorney during voir dire which only inquired into whether the venire members were either opposed to, or uncomfortable with, the notion of looking [at] different types of homicide *as a general proposition*." (ECF No. 16-15, PageID.604.) The court found that the post

> reflect[ed] that Jambor was fully aware that second-degree murder was an option, had weighed it, and simply believed it to be an inappropriate verdict. There is nothing improper with [] a juror advocating their view [that] the prosecution had proven all the elements of first-degree premeditated murder during deliberations and seeking to persuade others to adopt their position.

(*Id.*) The court also found there was nothing improper about jurors supporting the views of other jurors or jurors expressing general condolences to the victim's family. (*Id.* at PageID.605.) The court concluded that once a trial is over, jurors are "no longer under an obligation to remain impartial on the subject of Defendant's guilt." (*Id.*)

Under Supreme Court law, to merit a new trial, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). Although it is possible that the juror's Facebook

post could be interpreted differently, it cannot be said that the Court of Appeals' decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The facts offered by Abraitis do not establish that any juror deliberately concealed information during *voir dire*, or otherwise acted improperly such that his ability to receive a fair trial was impaired. *See Williams v. Bagley*, 380 F.3d 932, 948 (6th Cir. 2004); *Mason v. Mitchell*, 320 F.3d 604, 636 (6th Cir. 2003). So this claim does not warrant habeas relief.

## IV.

Before Mr. Abraitis may appeal this decision, "a circuit justice or judge" must issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court has rejected Abraitis' habeas claims on the merits, to satisfy § 2253(c)(2), Abraitis must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). Given that the foregoing analysis of Abraitis' claims was fairly straightforward, the Court believes that no reasonable jurist would argue that Abraitis should be granted habeas relief on his claims. Accordingly, a certificate of appealability will not issue from this Court. *Davis v. Rapelje*, 33 F. Supp. 3d 849, 865 (E.D. Mich. 2014). However, if Abraitis chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

For the foregoing reasons, the Court DENIES WITH PREJUDICE Abraitis' Petition for Writ of Habeas Corpus and DENIES Abraitis a certificate of appealability. Abraitis is granted leave to appeal *in forma pauperis*.

SO ORDERED.

Dated:  November 12, 2019

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 12, 2019.

s/Erica Karhoff
Case Manager to
Honorable Laurie J. Michelson